# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46903-1-II |
| Respondent, | |
| v. | |
| CHRYSTAL ROSE COX, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Chrystal Rose Cox was convicted of felony driving under the influence of intoxicants under former RCW 46.61.502(6)(b)(ii) (2008). On appeal, Cox challenges the trial court's denial of her motions to suppress (1) evidence resulting from the initial blood draw and the second blood test, arguing that the search warrants' supporting affidavits were insufficient to establish probable cause; and (2) evidence of her refusal to submit to a breath test, arguing that it violates her rights against self-incrimination and warrantless searches. Cox also argues that (3) she was prejudiced by the prosecutor's misconduct; (4) the trial court erred in denying her motion for a new trial based on the alleged prosecutorial misconduct; and (5) the sentencing court erred in calculating her offender score, or in the alternative, her attorney was ineffective for failing to object to the calculation.

We hold that the trial court did not abuse its discretion in denying her motions to suppress the evidence relating to (1) her initial blood draw and her second blood test because the affidavit supported a probable cause finding; and (2) her refusal to submit to a breath test because such evidence is nontestimonial and explicitly allowed under Washington law. We further hold that Cox failed to establish that she was prejudiced by the alleged prosecutorial misconduct and, therefore, her claims of (3) prosecutorial misconduct and (4) denial of a motion for a new trial fail. Finally, we hold that (5) the sentencing court did not err in calculating her offender score because our Supreme Court in *State v. Sandholm*, 184 Wn.2d 726, 364 P.3d 87 (2015), considered and rejected the same argument Cox now raises. Consequently, we affirm.

## FACTS

A. FACTUAL HISTORY

On March 31, 2013, Washington State Patrol Trooper Jeffery Heath observed Cox's vehicle traveling "at a very high rate of speed," and used his radar gun to determine that she was traveling at 83 MPH in a zone with a speed limit posted at 60 MPH miles per hour. 4 Verbatim Report of Proceedings (VRP) at 301, 303; 1 VRP at 15; Clerk's Papers (CP) at 2. Cox did not respond immediately to Trooper Heath's emergency lights, but she eventually stopped.

After stopping, Trooper Heath spoke to Cox through the passenger side window of Cox's car. Cox was the only person in the car. When Cox rolled the window down, Trooper Heath detected "a pretty obvious odor of intoxicants coming from inside the vehicle," and noticed Cox had bloodshot watery eyes and slurred speech. 4 VRP at 304-05; 1 VRP at 16-17. Trooper Heath asked Cox to step out of the car and to perform field sobriety tests (FSTs), but did not tell her that

they were voluntary. A disagreement between Trooper Heath and Cox ensued, which resulted in Trooper Heath calling a second Washington State Patrol Trooper, Ben Taylor, to the scene.

Cox agreed to perform the FSTs for Trooper Taylor. Trooper Taylor modified the first of the three FSTs because Cox was very agitated, they were on an overpass, and he "saw what [he] needed" as he was conducting them.[1]  4 VRP at 369. Based on Cox's performance on the FSTs, her demeanor, and the odors he smelled, Trooper Taylor arrested Cox and turned her over to Trooper Heath.

Trooper Heath advised Cox of her right to take a breath test, which Cox refused. Trooper Heath then applied for a search warrant for Cox's blood to be drawn and tested. In the affidavit in support of the warrant, Trooper Heath declared that his radar reported Cox traveling at 83 MPH in a 60 MPH speed zone, Cox was slow to respond to his emergency lights, Cox was argumentative, Cox had a strong odor of intoxicants about her person, Cox was alone in the car, Cox's speech was slurred, and Cox's eyes were watery and bloodshot. Trooper Heath also wrote, "Taylor contacted Cox and explained how the process works. At this time, Cox advised she wanted Taylor to administer the field sobriety tests. After completing the field sobriety tests Cox was arrested for DUI [driving under the influence.]" CP at 76. Trooper Heath did not note that one of the FSTs performed was not conducted according to the troopers' training. Finally, a dash cam recording of the stop showed that Trooper Heath did not tell Cox the FSTs were voluntary. The warrant was granted, and Cox was taken to the hospital for the blood draw.

---

[1] The modification, Trooper Taylor later admitted, "would probably decrease the validity of the tests because that's not how it is trained." 1 VRP at 100.

Cox's blood was tested on two different occasions. Cox's blood was initially tested shortly after it was drawn, but it needed to be retested because *State v. Martines*[2] was published and required a second warrant be obtained for the blood to be tested.

Cox was charged by amended information on October 31, 2014, in Clark County for felony driving while under the influence of intoxicants.[3] Prior to trial, Cox moved to suppress evidence seized pursuant to the search warrants.

B.      MOTIONS TO SUPPRESS

Cox sought to suppress evidence obtained from the blood draw, arguing, as relevant to this appeal, that the affidavit in support of the blood draw was conclusory and that the warrant for the blood draw did not authorize the blood to be tested. Cox also sought to suppress evidence of her refusal to submit to a breath test, arguing that it was evidence of her refusal to submit to a warrantless search.

A suppression hearing was held, and the trial court found there was probable cause to arrest Cox based upon the FSTs conducted by Trooper Taylor and based upon Trooper Heath's observations of the odor of intoxicants, Cox's bloodshot and watery eyes, and her slurred speech. However, the trial court also found that the evidence seized pursuant to the search warrant should be suppressed because the issuing magistrate believed that Trooper Heath had completed the FSTs and made the arrest. Finally, the trial court found that Cox's refusal to take the breath test was admissible.

---

[2] 182 Wn. App. 519, 331 P.3d 105 (2014), *rev'd*, 184 Wn.2d 83, 355 P.3d 1111 (2015).

[3] Former RCW 46.61.502(6)(b)(ii) (2008).

The State moved the trial court to reconsider its suppression of evidence seized through Trooper Heath's affidavit and resulting search warrant. Upon reconsideration, the trial court changed its previous finding:

> And I believe I need to correct myself. I did state that it was a miscommunication and then I suppressed the entire document. I believe that was incorrect. I needed to only suppress those statements that were miscommunicated and then determine whether or not there still was probable cause that still existed.
>
> . . . .
>
> And what the Court found at the time regarding Trooper Heath's involvement—and there were a couple of portions of the probable cause affidavit itself. Page nine on this document says, "[Heath] explained to Cox that based upon—or based on his observations and the odor of intoxicants, he believed she had been consuming alcohol this evening and asked Cox to submit to voluntary standardized field sobriety tests." That was a misstatement or a miscommunication because he did not tell Ms. Cox that it was voluntary, according to the tape.
>
> The other issue that the Court had with respect to this document at page 10, "Within a few minutes, Trooper Taylor, No. 1196, arrived on scene. [Heath] explained to Taylor the reason for the stop and the situation at hand. Taylor contacted Cox and explained how the process works. At this time Cox advised she wanted Taylor to administer the field sobriety test. After completing the field sobriety test, Cox was arrested for DUI. Cox was handcuffed, searched, and placed in the back of [Heath's] vehicle."
>
> When I read this in conjunction with [Heath's] answers, initially I was not— or I felt the officer had not been forthright or had miscommunicated information to the magistrate or Judge Rulli at the time. And I have not looked at Judge Rulli's— or the telephonic recording of Judge Rulli and Trooper Heath. I merely looked at the probable cause affidavit, along with the answers to [defense counsel's] questions.
>
> . . . .
>
> Therefore, this Court will correct itself in the interest of justice. The probable cause affidavit will be admissible if I take out the misstatement or miscommunication by Trooper Heath. The remaining portions of the probable cause affidavit do support the search for the evidence as indicated.

. . . .

. . . Because the affidavit was valid, the results of the blood draw will then be valid.

2 VRP at 152-54, 156.

As a result of the trial court's finding that Trooper Heath's excised affidavit supported probable cause for the first warrant, Cox then moved the trial court to consider the suppression of the initial blood test under *Martines*.[4]  The trial court denied Cox's reconsideration motion, but allowed Cox to challenge the second blood test.[5]

Cox challenged the results of the second blood test by arguing, among other things, that the supporting affidavit did not establish probable cause because it relied on documents purported to be attached but were never actually attached, and once those portions were excised from the document, probable cause no longer existed.  The trial court disagreed, finding that after excising the portions that were unsupported, probable cause still existed based on Trooper Heath's statements of his observations and interviews, which created the "causal connection between probable cause to the testing of this blood."  3 VRP at 243.  The trial court also found:

> The officer, as I indicated previously, stated that he's charged with the responsibility for the investigation.  He states that he's investigating a DUI under [RCW] 46.61.502; that the blood—the blood was previously drawn pursuant to a valid search warrant.  Now we're testing the blood on this matter.
>
> I'm going to go ahead and find that there is a causal connection between the first affidavit of probable cause to draw the blood and this affidavit to test the blood.

---

[4] 182 Wn. App. 519.

[5] The toxicology report for the second blood test showed Cox's blood tested positive for ethanol (0.10 grams per 100 milliliters), methamphetamine (0.50 milligrams per liter), and amphetamine (0.06 milligrams per liter).

6

C.      TRIAL AND SENTENCING

At the end of the State's rebuttal argument in closing, the following exchange took place:

> [THE STATE]:  He [Cox's attorney] talked about competence of that blood test.  You'll get this back there with you, and it states on it there's a 99.7 percent competence level.  Most reasonable explanation is usually the correct one.
>
> [DEFENSE COUNSEL]:  Your Honor, I have to object.  This argument is lowering the State's burden.
>
> THE COURT:  So noted.  It's beyond a reasonable doubt.  They have that information in front of them.  You may argue beyond a reasonable doubt, Counsel.
>
> [THE STATE]:  He said you'll get that instruction that says a reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence.  But if from such consideration you have an abiding belief in the truth of the charge, you're satisfied beyond a reasonable doubt.  You've seen all the evidence.  I say you find the defendant guilty of felony DUI.  Thank you.

6 VRP at 611.

The jury asked three questions during deliberations.  The three questions were, "Does blood alcohol level above .08 mg/L constitute under [the] influence to [an] appreciable degree?"; "Does the law state that having a blood alcholol [sic] level of .08 mg/L or above legally fit the definition of 'under the influence or or affected by the intoxicating liquor or drug?'"; and "May juror #3 send text message to children (or call?)".  CP at 172; 174, 176.  After deliberations, the jury found Cox guilty.  Following the guilty verdict, Cox argued prosecutorial misconduct and moved unsuccessfully for a new trial.

At sentencing, both parties signed a declaration of criminal history that calculated Cox's offender score as 3:  A 2004 vehicular assault conviction-2 points, and a 2008 possession of a

controlled substance conviction-1 point. Cox was sentenced within the standard range. Cox appeals.

## ANALYSIS

A.    AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

Cox argues the trial court erred in denying her motions to suppress evidence obtained as a result of the initial blood draw and as a result of the second blood test. Cox argues that both the affidavits of probable cause for the blood draw and the second blood test failed to establish probable cause. We hold that the trial court did not err in determining that the affidavits, after the appropriate portions were excised, were sufficient to establish probable cause for the blood draw and the retesting of the drawn blood.

"The Fourth Amendment to the United States Constitution provides that warrants may be issued only upon a showing of probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Martines*, 184 Wn.2d at 90 (internal quotations omitted). "Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). Thus, probable cause "'requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched.'" *Id.* at 140 (quoting *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)).

Our review of the issuance of a warrant is limited to the four corners of the affidavit. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). And, we view the affidavit in a commonsense

manner rather than hypertechnically. *State v. Chenoweth*, 160 Wn.2d 454, 477, 158 P.3d 595 (2007). All doubts are resolved in favor of the validity of the warrant. *State v. Maddox*, 152 Wn.2d 499, 509, 98 P.3d 1199 (2004). We afford great deference to the issuing magistrate's determination of probable cause. *Id.* at 509; *Chenoweth*, 160 Wn.2d at 477. However, while we defer to the magistrate's determination, the "trial court's assessment of probable cause is a legal conclusion we review de novo." *Neth*, 165 Wn.2d at 182.

1.      Blood Draw

Cox argues the trial court erred when it found the remaining portions of Trooper Heath's affidavit, after excising the "misrespresentations," supported probable cause for issuance of the warrant for a blood draw. Br. of Appellant at 17. We disagree.

In *Martines*, 184 Wn.2d at 90-91, 94, our Supreme Court considered whether probable cause existed to believe Martines was under the influence of drugs, as opposed to just alcohol, and whether a warrant authorizing a blood draw necessarily authorizes testing of that sample for evidence of the suspected crime. In *Martines*,

> The trooper included the following observations in his affidavit of probable cause: (1) Martines had a "strong odor of alcohol coming from his breath," (2) "[Martines] said he had one Blue Moon [beer]," (3) Martines was observed throwing a bag into the bushes containing a six-pack container of beer with one unopened beer bottle, which the trooper later recovered, (4) Martines had "blood shot watery eyes," (5) Martines had "a flush face," (6) "[Martines] walked in a slow and deliberate manner," (7) "[Martines] seemed off balance and struck the door frame as he entered the [patrol] car."

184 Wn.2d at 91 (quoting the record). Our Supreme Court held that the first three observations related directly to alcohol intoxication and the last four observations supported a probable cause finding that Martines was under the influence of intoxicants, whether those intoxicants were

alcohol or drugs. *Id.* at 92. "Further," the Supreme Court said, "the trooper may have believed Martines's impairment was caused, in part, by drugs, since Martines stated he had only 'one' beer. Lastly, the trooper's affidavit stated his special experience and expertise in detecting the effects of alcohol and drug impairment." *Id.*

Here, the trial court struck Trooper Heath's statement that he "asked Cox to submit to voluntary standardized field sobriety tests," from the affidavit because the video of the stop makes clear that Trooper Heath did not tell Cox that the FSTs were voluntary. 2 VRP at 153; CP at 75. The remainder of Trooper Heath's affidavit included the following observations: (1) Cox was alone in the vehicle with "a strong odor of intoxicants coming from inside the vehicle"; (2) Cox was traveling 83 MPH in a 60 MPH zone; (3) Cox was "slow to respond" to Trooper Heath's emergency lights; (4) Cox's "speech was slurred"; (5) Cox "had bloodshot and watery eyes"; (6) Cox said she had not been drinking; (7) Cox advised she wanted Trooper Taylor to administer the field sobriety tests and was arrested for driving under the influence after completing the FSTs; and (8) Cox would not consent to a breath test. CP at 75-76. Lastly, Trooper Heath's affidavit listed his special experience and expertise in detecting the effects of alcohol and drug impairment. CP at 74-75.

Just as our Supreme Court in *Martines* held that a probable cause finding was supported by the trooper's seven listed observations, the defendant's statements to the trooper, and the trooper's special experience in detecting intoxication, we similarly hold that Trooper Heath's observations, Cox's statements, and Trooper Heath's expertise, were sufficient to establish probable cause to believe Cox's blood would contain evidence of her intoxication. Therefore, the trial court did not err in finding that even when the challenged portions of Trooper Heath's affidavit

were excised, the remainder of Trooper Heath's affidavit supported a finding of probable cause to issue a warrant for Cox's blood to be drawn.

 2. Second Blood Test

Cox next argues that the affidavit for probable cause in support of the search warrant for the second testing of Cox's blood did not establish probable cause. However, as our Supreme Court in *Martines* held, "a warrant authorizing extraction of a blood sample necessarily authorizes testing of that sample for evidence of the suspected crime." 184 Wn.2d at 94.[6] As explained above, the excised version Trooper Heath's affidavit for a warrant to draw Cox's blood established probable cause that Cox was driving while under the influence. The warrant was signed, pursuant to that affidavit, authorizing the blood draw. Therefore, we hold that the retesting of Cox's blood was supported by the first warrant and that warrant was supported by probable cause as set forth in Trooper Heath's redacted affidavit for a blood draw.

B. EVIDENCE OF BREATH TEST REFUSAL

Cox argues the trial court erred in admitting evidence of her refusal to submit to a breath test. Br. of Appellant at 22. Specifically, Cox argues that a breath test is "a warrantless search," and that "[a] criminal defendant's assertion of her constitutional right to refuse . . . [a] warrantless search . . . cannot be used as evidence of her guilt." Br. of Appellant at 22. We disagree because Cox's refusal was nontestimonial, and Washington law explicitly allows the refusal of a breath test to be admitted as evidence to infer guilt.

---

[6] And WAC 448-14-020(1)(a)(iii) authorizes duplicate testing of a blood sample.

The trial court has broad discretion to admit or exclude evidence, and we review the trial court's decisions for an abuse of discretion. *State v. Lord*, 161 Wn.2d 276, 294, 165 P.3d 1251 (2007). A trial court abuses its discretion when its decision is based on untenable grounds or untenable reasons. *Id.* at 283-84.

"A refusal to submit to sobriety tests is not a statement communicating testimonial evidence; rather, the refusal 'is best described as conduct indicating a consciousness of guilt.'" *City of Seattle v. Stalsbroten*, 138 Wn.2d 227, 234, 978 P.2d 1059 (1999) (quoting *Newhouse v. Misterly*, 415 F.2d 514, 518 (9th Cir. 1969)). The fact that Cox refused a breath test rather than a FST is of no consequence because, as our Supreme Court held, "The act of refusal 'merely exposes [the defendant] to the drawing of inferences, just as does any other act.'" *Id.* And, that while "'one might infer from the refusal that it is an effort to conceal intoxication,'" the "'evidence of the refusal and the words of refusal, standing alone, does not constitute testimonial evidence or any thought, reason or excuse for the refusal.'" *Id.* at 234-35 (quoting *Welch v. District Court of Vt.*, 461 F. Supp. 592, 595 (D. Vt. 1978), *aff'd*, 594 F.2d 903 (1979)). Therefore, Cox's argument that her constitutional right to refuse a warrantless search prevents evidence of her refusal to take the breath test from being used against her fails.

Also, evidence of Cox's refusal to submit to a breath test is statutorily admissible. RCW 46.61.517 provides, "The refusal of a person to submit to a test of the alcohol or drug concentration in the person's blood or breath under RCW 46.20.308 is admissible into evidence at a subsequent criminal trial." And RCW 46.20.308(1) states, "Any person who operates a motor vehicle within this state is deemed to have given consent . . . to a test or tests of his or her breath for the purpose of determining the alcohol concentration" if the person is arrested and the arresting officer believes

the person was driving under the influence of alcohol or drugs. In considering whether RCW 46.61.517 allowed a defendant's refusal to take a breath test to be admitted as evidence of guilt, our Supreme Court concluded, "The legislative determination that refusal evidence is relevant and fully admissible to infer guilt or innocence thus now seems clear." *State v. Long*, 113 Wn.2d 266, 268, 272, 778 P.2d 1027 (1989) (citing former RCW 46.61.517 (LAWS OF 1987, ch. 373, § 5)); *see State v. Cohen*, 125 Wn. App. 220, 223-24, 104 P.3d 70 (2005) (relying on the *Long* court's conclusion that evidence of a defendant's refusal to take a breath test was admissible to infer guilt). Therefore, Cox's argument that the trial court erred in admitting evidence of her refusal to take a breath test fails.

In support of her argument, Cox cites to two cases: *State v. Gauthier*, 174 Wn. App. 257, 264, 298 P.3d 126 (2013) and *State v. Burke*, 163 Wn.2d 204, 181 P.3d 1 (2008), for the basic proposition that the Fifth Amendment protects a defendant's right to silence. Aside from the substantially dissimilar factual scenarios presented in *Gauthier* and *Burke*,[7] Cox's reliance on them is misplaced because evidence of her refusal to take a breath test is not testimonial evidence and nontestimonial evidence is not protected by the Fifth Amendment. *Stalsbroten*, 138 Wn.2d at 232.

C.    PROSECUTORIAL MISCONDUCT

Cox argues the State committed prosecutorial misconduct by minimizing its burden of proof and that she was prejudiced such that reversal is required. Again, we disagree.

---

[7] *Gauthier*, 174 Wn. App. 257, deals with a warrantless DNA test in a conviction for second degree rape. *Burke*, 163 Wn.2d 204, deals with a defendant's refusal to speak to police used as evidence that the defendant was guilty of third degree rape of a child.

To prevail on a claim of prosecutorial misconduct, Cox must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). When analyzing prejudice, the conduct is considered in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury. *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007), *cert. denied*, 554 U.S. 922 (2008). The defendant establishes prejudice when the misconduct had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 760.

Where an objection was made, a defendant must "show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *Id.* at 760. Where a trial court issues a curative instruction, this court presumes the jury follows the court's instructions. *State v. Anderson*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010).

Cox attempts to establish prejudice by arguing that the case against her was not overwhelming and that the jury's submission of two questions regarding the results of the blood test demonstrates the insufficiency of the trial court's curative instruction. But there was no prejudice because the trial court issued a proper curative instruction and no other alleged misconduct followed.

Cox objected during the State's rebuttal argument that the State was misstating its burden of proof.[8] 6 VRP at 611. The trial court responded by stating that the burden of proof was "beyond a reasonable doubt," that the jury had that information in front of them, and directed the State to

---

[8] No other part of the State's closing argument or rebuttal is alleged to be prejudicial or appears to have misstated the burden of proof.

argue in a manner consistent with that burden. 6 VRP at 611. The State then focused the jury's attention to the reasonable doubt jury instruction and recited language from that instruction before ending its rebuttal argument. We presume that the jury followed the trial court's instruction that the burden of proof was beyond a reasonable doubt. *Anderson*, 153 Wn. App. at 428.

Cox's argument that the case against her was not overwhelming and thereby prejudice is magnified or established is unavailing. The evidence showed that: Trooper Heath observed Cox driving 83 MPH in a 60 MPH zone; Cox did not immediately respond to Trooper Heath's emergency lights; Trooper Heath detected an obvious odor of intoxicants inside the car where Cox was the only occupant; Trooper Heath observed that Cox had bloodshot watery eyes and slurred speech; Trooper Taylor decided to arrest Cox based on his observation of her performance on the FSTs, the odors he smelled, and Cox's demeanor; Cox refused to take a breath test; and the second blood test showed Cox's blood tested positive for ethanol (0.10 grams per 100 milliliters), methamphetamine (0.50 milligrams per liter), and amphetamine (0.06 milligrams per liter). In light of the evidence presented, Cox's argument fails.

Cox's argument that the jury's three questions demonstrates that the prosecutor's comments had a substantial likelihood of affecting the verdict despite the trial court's curative instruction also fails. The three jury questions do not show confusion on the part of the jury regarding the State's burden of proof. Instead, the jury questions show confusion of whether a blood alcohol level of .08mg/L met the legal definition for "under the influence." CP at 174. Therefore, we hold that Cox's claim of misconduct by the prosecutor fails because she fails to establish prejudice.

15

D.     MOTION FOR A NEW TRIAL

Cox argues the trial court erred in denying her motion for a new trial based on the prosecutorial misconduct claim detailed above. Because Cox's prosecutorial misconduct claim fails, her argument that the trial court erred in denying her motion for a new trial also fails.

"CrR 7.5(a) provides that '[t]he court on motion of a defendant may grant a new trial . . . when it affirmatively appears that a substantial right of the defendant was materially affected.'" *State v. McKenzie*, 157 Wn.2d 44, 51, 134 P.3d 221 (2006). The trial court's decision on a motion for new trial is within the discretion of the trial court and this court reviews the trial court's decision for "'a clear abuse of discretion.'" *Id.* (quoting *State v. Wilson,* 71 Wn.2d 895, 899, 431 P.2d 221 (1967)). "An abuse of discretion will be found 'only when no reasonable judge would have reached the same conclusion.'" *Id.* at 52 (quoting *State v. Bourgeois*, 133 Wn.2d 389, 406, 945 P.2d 1120 (1997)).

When a motion for a new trial under CrR 7.5(a) is based on a claim of prosecutorial misconduct, the defendant "'bears the burden of establishing the impropriety of the prosecuting attorney's comments and their prejudicial effect.'" *Id.* (quoting *State v. Brown,* 132 Wn.2d 529, 561, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998)). Because we hold that Cox fails to show she was prejudiced by the alleged prosecutorial misconduct, we hold that the trial court did not abuse its discretion in denying her motion for a new trial.

E.    CALCULATION OF OFFENDER SCORE

Cox argues that the sentencing court miscalculated her offender score when it included her prior convictions for vehicular assault and possession of a controlled substance. Cox asserts that her prior convictions are not of the type identified under former RCW 9.94A.525(2)(e) (2011), and, therefore, should not have been counted. We disagree.

In *State v. Sandholm*, 184 Wn.2d at 730-31, our Supreme Court addressed the very argument Cox makes before this court and held that "former subsection (2)(e) [of RCW 9.94A.525 (2008)] sets out certain *additional* provisions for calculating an offender score when the present conviction is for felony DUI." *Id.* at 739.[9] Consequently, we hold the sentencing court did not err in calculating Cox's offender score by including her prior convictions for vehicular assault and possession of a controlled substance.[10]

## CONCLUSION

We hold that the trial court did not abuse its discretion in denying Cox's motions to suppress the evidence relating to the blood draw and blood test, and Cox's refusal to submit to a breath test. We further hold that Cox failed to show that she was prejudiced by any alleged prosecutorial misconduct, and therefore, her claims alleging prosecutorial and error in denying her

---

[9] Subsection (2)(e) of former RCW 9.94A.525 (2011), which Cox was sentenced under, was unchanged from subsection (2)(e) in former RCW 9.94A.525 (2008), which Sandholm was sentenced under.

[10] Cox relies on *State v. Morales*, 168 Wn. App. 489, 278 P.3d 668 (2012) and *State v. Jacob*, 176 Wn. App. 351, 308 P.3d 800 (2013) for support. However, our Supreme Court in *Sandholm* expressly overruled both cases that Cox relies on. *Sandholm*, 184 Wn.2d at 738 ("We disagree with both *Morales* and *Jacob* and overrule them.").

No. 46903-1-II

motion for a new trial fail.  Finally, we hold that the trial court did not err in calculating her offender

score.  Thus, we affirm.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040,

it is so ordered.

_____
Lee, J.

We concur:

_____
Worswick, P.J.

_____
Melnick, J.