Torry C. GANNON, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. ED 99326.

Missouri Court of Appeals, Eastern District, Division Five.

Oct. 22, 2013.

---

Chris Koster, Attorney General, Rachel M. Jones, Special Asst. Atty. Gen., Missouri Department of Revenue, Jefferson City, MO, for appellant.

Michael E. Reid, Edwardsville, IL, for respondent.

ROBERT M. CLAYTON III, Chief Judge.

The Director of Revenue, State of Missouri ("the DOR"), appeals the judgment

of the trial court in favor of Torry Gannon on Gannon's petition for review of the revocation of his driver's license pursuant to Section 302.535 RSMo (Cum.Supp.2002).[1] We reverse and remand.

## I. DISCUSSION

Gannon was arrested for driving while intoxicated after being stopped for speeding and failing to drive within a single lane. Gannon's driver's license was revoked pursuant to Section 302.505. Gannon filed a petition for trial *de novo* to review the revocation. The trial court granted his petition and reinstated Gannon's driving privileges. The DOR now appeals.[2]

### A. Standard of Review

In his sole point on appeal, the DOR claims the trial court erred in reinstating Gannon's driving privilege because there was sufficient evidence of probable cause to arrest Gannon for driving while intoxicated. The trial court entered judgment finding that the officer did not have probable cause based upon insufficient evidence and testimony concerning the field sobriety tests.

As an initial matter, we note that at the beginning of trial, the DOR specifically requested findings from the trial court regarding "any indicia of intoxication [alleged] that the Court did not believe. . . ." The trial court's judgment did not contain any such specific findings. Instead, the court entered a form judgment with boxes checked and one sentence reflecting a finding that "officer did not have probable cause based upon insufficient evidence and

testimony re: field sobriety tests re: impairment." Additionally, we note the transcript appears to reflect the trial court's entry of judgment in favor of Gannon after his counsel moved for a "directed verdict" at the close of the DOR's case. At the close of the DOR's case, counsel for Gannon asked for a directed verdict, claiming the DOR failed to meet its prima facie burden. The parties presented arguments on counsel for Gannon's request, and thereafter the following discussion occurred:

> THE COURT: All right. She'll give you a copy of that judgment, and we're off the record.
>
> COUNSEL FOR GANNON: I would like to put on our expert as far as to further refute. Thus far I've asked for a directed verdict.
>
> THE COURT: And I'm going to give you a copy of the judgment, so you won't have to worry about it.
>
> (Proceedings were concluded.)

 A motion for directed verdict is inappropriate in a court-tried case. *Spry v. Director of Revenue*, 144 S.W.3d 362, 367 (Mo.App. S.D.2004). In a jury-tried case, a motion for directed verdict challenges the sufficiency of the plaintiff's evidence to make a submissible case. *Id.* at 366. However, in a court-tried case, such as this one, we treat a motion for directed verdict as a motion for judgment pursuant to Rule 73.01(b).[3] Rule 73.01(b) provides, in relevant part that in cases tried without a jury, "[a]fter the plaintiff has completed presentation of plaintiff's evidence, the defendant may move by motion for a judgment on the grounds that upon the facts

---

**1.** All further statutory references are to RSMo (Cum.Supp.2002).

**2.** Gannon filed a motion to strike the DOR's reply brief, claiming the DOR raises several issues on appeal for the first time in his reply

brief. Gannon's motion to strike the DOR's reply brief is denied.

**3.** All references to Rules are to Missouri Supreme Court Rules (2012).

and the law the plaintiff is not entitled to relief." Unlike a motion for directed verdict, a motion under Rule 73.01(b) submits the case for judgment on the merits. *Id.* at 367. Thus, rather than review the present case for submissibility, we review the trial court's judgment reinstating Gannon's driving privileges under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Coyle v. Director of Revenue*, 88 S.W.3d 887, 892 (Mo.App. W.D.2002). We will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

### B. Probable Cause

 Pursuant to Section 302.505, the DOR may administratively suspend or revoke a driver's license upon a determination the driver was arrested upon probable cause for driving while intoxicated. The aggrieved driver may then seek review of the suspension or revocation through a trial *de novo*. Section 302.535.1; *Orton v. Director of Revenue*, 170 S.W.3d 516, 520 (Mo.App. W.D.2005). The DOR has the burden of proof to establish the prima facie case for revocation by a preponderance of the evidence. *Orton*, 170 S.W.3d at 520. The DOR must show there was probable cause to arrest the driver for driving while intoxicated, and the driver's blood alcohol concentration was .08 percent or more. *Id.* The phrase "reasonable grounds" is synonymous with probable cause. *Findley v. Director of Revenue*,

204 S.W.3d 722, 726 (Mo.App. S.D.2006) (internal citations omitted). Probable cause to arrest exists if the circumstances and facts would lead a person of reasonable caution to believe an offense has been committed. *Coyle*, 88 S.W.3d at 893. Whether probable cause existed to arrest Gannon for driving while intoxicated is determined by examining the circumstances surrounding the arrest as they appeared to a prudent, cautious, and trained police officer. *Id.*

Here, Trooper Evan Van Winkle testified at trial.[4] In addition, the alcohol influence report ("AIR"), narrative report, and other supporting documents were admitted at trial, over Gannon's objection. Trooper Van Winkle testified he observed Gannon driving over the speed limit and he observed Gannon's vehicle fail to drive within a single lane. Prior to performing any field sobriety tests, Trooper Van Winkle observed the strong odor of intoxicating beverage about Gannon's person, and he asked Gannon if he had consumed any alcoholic beverages. Gannon stated he "had five or six beers at the O'Aces." Trooper Van Winkle also observed Gannon's eyes, which were bloodshot, glassy, and watery, and he noted Gannon's speech was slurred. Trooper Van Winkle also noted an observation of "swaying" balance or walking on the AIR.

Following these initial observations, Trooper Van Winkle administered two field sobriety tests, as well as the horizontal gaze nystagmus test.[5] Trooper Van

---

4. In his brief, the DOR claims portions of the transcript are incorrectly labeled, and the initial portion of Trooper Van Winkle's testimony was simply voir dire conducted by Gannon's counsel regarding Trooper Van Winkle's training. However, pursuant to Rule 81.15(d), in the event of a dispute concerning the correctness of the transcript, the DOR was required to designate the challenged portions of the transcript in writing to this Court within fifteen days after the tran-

script is filed. The DOR has not filed any such designation with our Court, and therefore, we review the transcript as it is certified and labeled in the record on appeal.

5. The horizontal gaze nystagmus ("HGN") test measures eye movement and scores one point for eye movement indicative of alcohol influence for three separate tests for each eye. *Arch v. Director of Revenue*, 186 S.W.3d 477, 481, n. 4 (Mo.App. E.D.2006) (internal cita-

Winkle testified, and his report reflects, that Gannon exhibited two clues on the walk-and-turn field sobriety test. According to Trooper Van Winkle, two or more clues exhibited on the walk-and-turn test serves as an indicator of intoxication. The AIR reflects that Gannon also exhibited several clues on the one-leg stand field sobriety test, as well as a score of six points on the HGN test.

During the trial, counsel for Gannon questioned Trooper Van Winkle concerning his observations of Gannon, his administration of the field sobriety tests, and his training to administer the HGN test. Trooper Van Winkle testified he received training from the academy to administer the HGN test, which equated to four and a half hours of training.[6] In addition, counsel for Gannon questioned Trooper Van Winkle regarding the administration of two field sobriety tests, the walk-and-turn test and the one-leg stand test. With respect to the results of the walk-and-turn test, counsel questioned Trooper Van Winkle about his inconsistent statements concerning whether Gannon used his hands or fully used his arms for balance while performing the test. Trooper Van Winkle admitted that if Gannon used only his hands for balance that would not be a clue to indicate impairment for the test. Counsel similarly questioned Trooper Van Winkle about whether Gannon used only his hands or used his arms for balance during the one-leg stand test, and Trooper Van Winkle stated he could not recall whether Gannon used his hands or his arms.

■ Although Gannon challenged Trooper Van Winkle with respect to his method of administering the field sobriety tests and his training to administer the HGN, these tests are not mandatory to a determination of probable cause. *See Coyle*, 88 S.W.3d at 894; and *Arch*, 186 S.W.3d at 480. An officer may develop probable cause to arrest an individual for driving while intoxicated absent any field sobriety tests at all. *Findley v. Dir. of Revenue*, 204 S.W.3d 722, 727 (Mo.App. S.D.2006) (internal citations omitted). The tests merely supplement the officer's other observations in determining whether probable cause exists. *Id.*

■ Absent field sobriety tests or HGN testing, similar observations as those made by Trooper Van Winkle in the present case, such as traffic violations; the strong odor of intoxicating beverage; bloodshot, glassy, watery eyes; slurred speech; swaying balance or gait, and an admission to drinking by the driver have been considered sufficient evidence of probable cause to arrest for driving while intoxicated. *Brown v. Director of Revenue*, 85 S.W.3d 1, 4 (Mo. banc 2002) (probable cause to arrest a driver for alcohol-related violation exists when police officer observes illegal operation of motor vehicle, and other indicia of intoxication upon coming into contact with driver); *See also Routt v. Director of Revenue*, 180 S.W.3d 521, 523–24 (Mo.App. E.D.2006) (strong odor of alcoholic beverage, watery, bloodshot, glassy eyes, slurred speech, and swaying provided officer with reasonable grounds to believe individual was driving while intoxicated); *Rain v. Director of Revenue*, 46 S.W.3d 584, 588 (Mo.App. E.D.2001) (erratic and illegal driving, glassy, bloodshot eyes,

tions omitted). The highest possible score on the test is six points, and a score of four points or more indicates a suspect is intoxicated. *Id.*

6. However, as counsel for Gannon noted at trial, Missouri courts have determined adequate training to administer the HGN test consists of a minimum of eight hours. *See State v. Hill*, 865 S.W.2d 702, 704 (Mo.App. W.D.1993).

slurred speech, unsteadiness on feet, difficulty concentrating sufficient to provide officer with probable cause to arrest).

In the present case, the trial court found insufficient evidence of probable cause to arrest Gannon for driving while intoxicated; however, the trial court's judgment does not contain specific findings regarding credibility relating to the evidence of indicia of intoxication. Even assuming the trial court found the evidence relating to the administration of the field sobriety tests or the HGN test not credible, the DOR still presented sufficient evidence of Trooper Van Winkle's observations of indicia of intoxication, if believed, to support a prima facie finding of probable cause to arrest Gannon for driving while intoxicated. Absent a finding from the trial court regarding credibility concerning this evidence, the DOR was able to meet its burden in this case with such evidence. Thus, the trial court erred in finding insufficient evidence of probable cause, and we must reverse the judgment.

 However, as previously discussed, from the record it appears as though Gannon informed the court he wished to call an expert to testify, but reminded the trial court he had moved for a "directed verdict" at the close of the DOR's case. In response, the trial court did not specifically state it was granting Gannon's motion for "directed verdict," or as previously discussed, for judgment pursuant to Rule 73.01(b). As a result, given the uncertainty in the record before us as to whether Gannon was given an opportunity to present evidence to rebut the DOR's prima facie case, we remand the case to the trial court for a new trial to allow Gannon that opportunity and to allow the trial court the opportunity to make credibility determinations concerning the evidence and testimony. *See Routt,* 180 S.W.3d at 525; *Spry,* 144 S.W.3d at 369.

## II. CONCLUSION

The judgment of the trial court reinstating Gannon's driving privileges is reversed. The cause is remanded to the trial court for further proceedings consistent with this opinion.

KURT S. ODENWALD, and LISA S. VAN AMBURG, JJ., concur.