**STATE of Missouri, Respondent,**

**v.**

**Jerry J. SWARTZ, Appellant.**

**WD 79058**

Missouri Court of Appeals,
Western District.

OPINION FILED: February 14, 2017

Application for Transfer to Supreme Court Denied March 28, 2017

Application for Transfer Denied May 30, 2017

Stephanie Watson, Jefferson City, MO, for Respondent

Travis L. Noble, Jr., Clayton, MO, for Appellant.

Before Special Division: Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and Zel M. Fischer, Special Judge

Gary D. Witt, Judge

Appellant Jerry J. Swartz ("Swartz") appeals his convictions after a jury trial of one count of Driving While Intoxicated, section 577.010,[1] and one count of Failure to Drive on the Right Half of the Roadway, section 304.015. Swartz was sentenced to six months in the county jail on the charge of Driving While Intoxicated, but the court suspended the execution of that sentence and placed him on two years of probation. On the charge of Failure to Drive on the Right Half of the Roadway he was given a fine of $50. Swartz raises six points on appeal challenging his convictions. We affirm in part and reverse in part.

## Factual Background [2]

On March 21, 2014 around 11:50 p.m., Sergeant Nicholas Berry ("Sergeant Berry") of the Missouri State Highway Patrol was on patrol on Highway M in Moberly, Missouri. Just before midnight, Sergeant Berry viewed Swartz driving in the middle of the roadway on an extension of High-

way M known as Urbandale. The stretch of Urbandale where this occurred is a two-lane blacktop road with one lane going each direction. Urbandale is wide enough for two cars to safely pass but most of the road does not have a painted center line. However, at the time Sergeant Berry first observed Swartz, it was near a rail road crossing and there is a center line painted on the street on each side of the crossing for a limited distance. Sergeant Berry testified that the vehicle was equal parts on each side of the center of the roadway.

Sergeant Berry followed Swartz's vehicle and observed him fail to make a complete stop at a stop sign. Swartz then made a right turn and crossed the center line on Williams Street, another two-way blacktop road with a single lane going in each direction. Again, Swartz proceeded to drive down the middle of the road. A video showing Swartz's operation of the vehicle was played for the jury.

Sergeant Berry activated his emergency lights and stopped Swartz's vehicle. He approached the vehicle and observed that Swartz's eyes were glassy and bloodshot. He also noticed the odor of intoxicants coming from the vehicle. Swartz's speech was a bit mumbled and he spoke with a lisp. Sergeant Berry observed that Swartz had a difficult time grasping, separating, and moving through documents. At this time, Sergeant Berry flashed a signal to his patrol car camera indicating that he believed he had an intoxicated driver.

Sergeant Berry had Swartz exit his vehicle and sit in his patrol car. While Swartz was sitting in the patrol car, Sergeant Berry asked him whether he had been drinking that night, and Swartz denied

---

1. All statutory references are to the Revised Statutes of Missouri 2000 as currently supplemented, unless otherwise indicated.

2. On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict. *State v. Peal*, 393 S.W.3d 621, 623 n.1 (Mo. App. W.D. 2013).

that he had consumed any alcohol. The odor of alcohol persisted while Swartz was in the patrol car. Sergeant Berry testified that he did not have Swartz do a walk-and-turn or one-leg stand test because Swartz claimed he had a torn Achilles tendon. Sergeant Berry did conduct a Horizontal Gaze Nystagmus Test ("HGN") but he admitted at trial that he performed the test incorrectly. Sergeant Berry asked Swartz to submit to a preliminary breath test, but Swartz refused and told Sergeant Berry to just bring him into the station to perform the test on the "real machine."

Sergeant Berry arrested Swartz for driving while intoxicated and obtained a search warrant for Swartz's blood. Swartz was taken to Moberly Regional Medical Center to get his blood drawn. At the hospital, Swartz was intimidating, threatening, and belittling to some of the hospital staff. Swartz told the medical staff that he had donated blood that day and wanted them to check with a physician to see if the blood draw was medically safe. The doctor on duty indicated that it would not be an issue. Phlebotomist Erin Haden ("Haden") drew Swartz's blood twice. The first draw occurred at 1:36 a.m. and the blood was drawn into a gray top tube, which was inverted and labelled with Swartz's name, date of birth, date of blood draw, time, incident number, and was initialed by Sergeant Berry and Haden. During this draw, Haden testified that Swartz pretended to faint as he closed his eyes and slumped back in his chair immediately after the needle was entered in his arm before any blood was drawn. Haden, who had met Swartz before, testified Swartz's speech was a little slurred, he shuffled his feet when he walked, and his eyes were bloodshot. She testified that she believed he was intoxicated. The same procedure was used for a second blood draw at 2:06 a.m. Both tubes were placed into an evidence box marked with the incident number and

sealed with tape and given to Sergeant Berry.

Sergeant Berry placed the evidence box into his patrol car and two days later, on March 24, transported the samples to Troop headquarters where he placed the samples into a locked evidence refrigerator at 9:41 a.m. Sergeant Berry completed a chain of custody form on the blood box kit and testified that he followed all the steps he was trained to perform regarding marking and securing the evidence. On the same day, at 11:00 a.m., Sergeant Gail Frank Riley ("Sergeant Riley"), the evidence officer, took the samples into his custody and signed for them. The next entry on the chain of custody log indicates the lab received the samples on March 26, 2014 at 1:19 p.m.

Criminalist Craig Bishop ("Bishop") from the Missouri State Highway Patrol tested the blood samples. He testified that when he received the samples they were in a sealed evidence box and the samples were labelled with Swartz's name. The result of the first blood draw showed a blood alcohol level of 0.107 percent and second draw showed a blood alcohol level of 0.096 percent.

The jury found Swartz guilty of one count of Driving While Intoxicated, section 570.010, and one count of Failure to Drive on the Right Half of the Roadway, section 304.015. Jury sentencing was waived and prior to the sentencing hearing Swartz filed a motion to stay alleging that the appointed special prosecutor did not have prosecutorial powers. The stay was denied, and Swartz filed a writ arguing the same, which was also denied. The court sentenced Swartz to six months in the county jail but suspended execution of that sentence and placed him on two years' probation. Swartz now appeals, raising six points of error. Additional facts will be included

as necessary in the analysis section that follows.

## Analysis

### Point One

In Point One on appeal, Swartz argues that the trial court erred in denying his motion to suppress the blood test results because the testing of the samples constituted an unlawful search pursuant to the Fourth Amendment of the United States Constitution in that the search warrant only authorized the seizure of the blood samples and not the actual testing of the samples.

In reviewing the trial court's denial of a motion to suppress, we consider the evidence presented at both the suppression hearing[3] and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling. *State v. Brand*, 309 S.W.3d 887, 892 (Mo. App. W.D. 2010) (citing *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005)). "[W]e review the facts and inferences therefrom in the light most favorable to the trial court's ruling, and disregard all contrary inferences." *State v. Chambers*, 234 S.W.3d 501, 512 (Mo. App. E.D. 2007). Our review is limited to a determination of whether there was sufficient evidence to support the trial court's findings. *Id.* "We will not disturb the trial court's decision to admit or exclude evidence unless there has been an abuse of discretion." *Id.* We defer to the trial court's superior opportunity to judge the credibility of the witnesses at the suppression motion hearing. *Id.* *State v. Nelson*, 334 S.W.3d 189, 193 (Mo. App. W.D. 2011). "Whether the Fourth Amendment has been violated, however, is an issue of law that we review *de novo*." *Brand*, 309 S.W.3d at 892.

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. CONST. amend IV; Mo. CONST. art. I, § 15. It has been long settled that the drawing of blood for evidentiary purposes constitutes a search and implicates the Fourth Amendment. *See Missouri v. McNeely*, —— U.S. ——, 133 S.Ct. 1552, 1558, 185 L.Ed.2d 696 (2013). Under ordinary circumstances, an officer must obtain a search warrant prior to a blood draw when the person does not consent. *Id.*; *see also Schmerber v. California*, 384 U.S. 757, 769–70, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

In Point One, Swartz does not challenge the legality of the search warrant actually obtained by Sergeant Berry prior to the drawing of his blood. Rather, Swartz argues that the subsequent testing of the blood for its blood alcohol content following the blood draw is an additional intrusion upon his Fourth Amendment rights that required specific findings and judicial

**3.** Although Swartz and the State both cite to the transcript from the suppression hearing in support of their arguments, no such transcript has been filed with the Court.

Rule 81.12(a) provides that the record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, divided into two components, the legal file and the transcript. *Jaggie v. Attaran*, 70 S.W.3d 595, 597 (Mo. App. E.D. 2002). If an appellant desires review of an issue, it is the appellant's duty to furnish a transcript containing all the records, proceedings and evidence relating thereto. In the absence of the required record, there is nothing for this court to review. *Id.* *Powers v. Coffman*, 383 S.W.3d 12, 13–14 (Mo. App. E.D. 2012). On this basis alone we would be unable to provide Swartz relief regarding any claims for which the suppression hearing provides relevant facts. However, because we have determined that based solely on the testimony presented at trial Swartz's claims should be denied, we will proceed to consider the merits.

authorization in the form of a search warrant explicitly authorizing such testing. Swartz argues the search warrant that authorized his blood draw was deficient in this respect, in that it was silent as to the issue of the testing of the blood samples after they were drawn.

In support of this argument, Swartz relies on two cases. The first case, *Skinner v. Railway Labor Executives' Association*, was decided by the United States Supreme Court in 1989 and considered the "special needs" exception to the search warrant requirement for obtaining blood samples. 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). The case opined that the first intrusion in a blood test is the actual physical intrusion of the body to obtain the sample and the second invasion of the individual's privacy interest is the chemical analysis of the sample. *Id.* at 616, 109 S.Ct. 1402. Since the actual issue in that case pertained to an *exception* to the warrant requirement, *Skinner*'s holding has no direct bearing on the issue herein, which is whether the search warrant that was issued here was sufficient to authorize both the draw and subsequent analysis of Swartz's blood.

The second case relied upon by Swartz is *State v. Martines*, 182 Wash.App. 519, 331 P.3d 105 (2014). In *Martines*, the Washington Court of Appeals held, relying primarily on *Skinner*, that the drawing of blood and the testing of blood constitute two separate searches, each of which require particular authorization. *Id.* at 530. That court held that a search warrant which only authorized the blood draw and did not also specifically authorize the testing of the blood sample, constituted a Fourth Amendment violation. *Id.* The *Martines* case upon which Swartz relies, however, was overturned by the Washing-

ton Supreme Court. *See State v. Martines*, 184 Wash.2d 83, 355 P.3d 1111 (Wash. 2015). The Washington Supreme Court held that the search warrant in that case authorized the extraction of a blood sample to obtain evidence regarding a driving under the influence investigation, which necessarily included the testing of the sample. *Id.* at 1115–16. The Washington Supreme Court reasoned that

> [t]he purpose of the warrant was to draw a sample of blood from Martines to obtain evidence of DUI. It is not sensible to read the warrant in a way that stops short of obtaining that evidence. A warrant authorizing a blood draw necessarily authorizes blood testing, consistent with and confined to the finding of probable cause. The only way for the State to obtain evidence of DUI from a blood sample is to test the blood sample for intoxicants.

*Id.* at 1115. Tellingly, Swartz is unable to identify any case law that remains good authority for the proposition that *Skinner* requires a search warrant to include a detailed authorization for what kind of testing to which the blood may be subjected in order to satisfy the Fourth Amendment.

The search warrant at issue in this case authorized the search and seizure of Swartz's body to obtain a blood sample to provide evidence for the belief, supported by Sergeant Berry's affidavit establishing probable cause, that the search would locate "evidence of the crime of driving while intoxicated." Neither *Skinner* nor *Martines* supports Swartz's present argument that the search warrant obtained by Sergeant Berry was insufficient to authorize both the draw of Swartz's blood and the subsequent testing of that blood for its blood alcohol content.[4]

---

4. Swartz also analogizes this case to *Riley v.* *California*, — U.S. ——, 134 S.Ct. 2473, 189

Swartz also claims that because the search warrant did not specifically detail for what purposes the blood draw could be used, it allows for "rummaging" and "wide-ranging searches" forbidden by the Missouri and United States Constitutions. While it is true the search warrant does not specify the exact testing mechanisms to be used to secure the evidence sought by the State, it does specify that the crime for which the evidence is being seized is driving while intoxicated and the testing was confined to locating evidence consistent with that finding of probable cause.[5] We find that the search warrant issued here was sufficient to authorize both the blood draw and the testing of the blood to secure evidence regarding the crime for which there was probable cause to search.

Point One is denied.

### Point Two

■ In Point Two on appeal, Swartz argues that the trial court erred in denying his Motion to Suppress Evidence because the evidence seized was the result of an unlawful search and seizure as Swartz was stopped, detained, and charged for failing to drive on the right half of the roadway of sufficient width, but the roadway was not of sufficient width, thirty feet, to be charged under that statute and no other probable cause existed for the stop.

The standard of review for this point is the same as Point One and will not be repeated here.

■ The Fourth Amendment to the United States Constitution protects citizens from "unreasonable searches and seizures." *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005). The Missouri Constitution offers the same level of protection as the United States Constitution, and the same analysis used in cases interpreting the United States Constitution apply in Missouri. *Id.* (citing *State v. Damask*, 936 S.W.2d 565, 570 (Mo. banc 1996)).

■ The stopping of a motor vehicle by law enforcement is a seizure under the Fourth Amendment. *Id.* Although warrantless seizures are generally unreasonable and, therefore, unconstitutional, an exception has been crafted to what is termed *"Terry* stops" whereby an officer may conduct a brief "investigative stop" where he "has a 'reasonable suspicion' based on 'specific and articulable facts' that illegal activity has occurred or is occurring." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Whether an officer has reasonable suspicion is determined on an objective basis and the question to be answered is whether "the facts available to the officer at the moment of the seizure or search

L.Ed.2d 430 (2014). In *Riley,* the United States Supreme Court held that generally a warrant is required before law enforcement may search the contents of a cellular phone when the phone has been discovered in a search incident to an arrest. 134 S.Ct. at 2485. The analogy to *Riley* is unpersuasive. *Riley* pertained to *cellular phones* seized as a result of a *search incident to arrest* and not pursuant to a search warrant. The nature of the item seized and circumstances of seizure in *Riley* are sufficiently distinct that we do not see any direct relevance to the issue at hand. In this case, we have prior judicial authorization from a neutral magistrate to seize Swartz's blood to obtain evidence relating to

his alleged driving while intoxicated. The magistrate determined there was probable cause to believe evidence of the crime would be discovered through this search. This difference alone makes the analogy to *Riley* an unpersuasive analogy.

5. Swartz does not claim that his blood sample was used for anything other than determining its blood alcohol content. We do not reach the issue of whether the search warrant in this case would have authorized any additional testing, analysis, or use outside of the current DWI investigation.

'warrant a man of reasonable caution in the belief that the action taken was appropriate?'" *Id.* (quoting *Terry*, 392 U.S. at 21–22, 88 S.Ct. 1868). Reasonable suspicion is a less stringent standard than probable cause and "[t]he quantity and quality of the information must be considered in the 'totality of the circumstances' to determine whether reasonable suspicion exists." *Id.* at 473 (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)).

 *Terry*'s "reasonable suspicion" standard also applies to traffic stops and may be based on an officer's observation of a traffic violation. *Id.* (citing *State v. Barks*, 128 S.W.3d 513, 516 (Mo. banc 2004)). "A traffic violation, however, is not required to create reasonable suspicion to justify a stop; justification may be based on erratic or unusual operation." *Id.* (citing *State v. Deck*, 994 S.W.2d 527, 535 (Mo. banc 1999)).

Sergeant Berry testified at trial that he initiated a stop of Swartz for three primary reasons. First, Sergeant Berry initially observed Swartz when he saw him driving in the middle of a two-way road. He testified that the road was wide enough for two cars to pass safely going opposite directions and, although the road does not have a center line in certain sections, where Sergeant Berry first saw Swartz driving in the middle of the road was a section which did have a center line. Second, Sergeant Berry testified that he followed Swartz and observed Swartz fail to make a complete stop at a stop sign. Third, Sergeant Berry again observed Swartz driving in the middle of a second two-way road after he turned at the stop sign.

In this point on appeal, Swartz's sole argument that Sergeant Berry did not have reasonable suspicion[6] to stop Swartz's vehicle because the roadway on which Swartz was travelling was not thirty feet in width and, therefore, was not of "sufficient width" to be charged and convicted under section 304.015, making the stop constitutionally impermissible. Assuming *arguendo* that Sergeant Berry could not have stopped Swartz for driving in the middle of the road due to the road's width, an issue that will be addressed later in the opinion, Swartz completely ignores the other justification supporting Sergeant Berry's stop of Swartz, failure to stop at a stop sign. Sergeant Berry's testimony that he observed Swartz's failure to fully stop at a stop sign is alone sufficient to support Swartz's stop for a brief investigation. *See Barks*, 128 S.W.3d at 516 ("A routine traffic stop based on the violation of state traffic laws is a justifiable seizure under the Fourth Amendment"); *Pike*, 162 S.W.3d at 473 ("Reasonable suspicion—and therefore a traffic stop—may be based on the officer's observation of a traffic violation"). Swartz does not challenge Sergeant Berry's testimony that (1) Swartz failed to fully stop at a stop sign and (2) Sergeant Berry initiated the stop of Swartz's vehicle based both on his failure to drive on the right side of the roadway

---

**6.** Swartz repeatedly in this point refers to "probable cause" as necessary to make an arrest and at times argues Sergeant Berry did not have probable cause to arrest Swartz. However, his argument stated in his point relied on and in his argument section is that the trial court should have suppressed certain evidence because Sergeant Berry did not have the authority *to make the stop in the first instance.* Indeed, Swartz sums up his argu-

ment as "[b]ecause the pretextual stop of Mr. Swartz's vehicle did not violate any statute or law in Missouri, any evidence obtained as a result of that stop must be suppressed as the fruit of the poisonous tree." Therefore, we will treat this point as it is set out in the point on appeal and, in parts argued, as challenging the authority of Sergeant Berry to make the stop in the first instance.

*and* his failure to stop at a stop sign. The mere fact that Sergeant Berry did not write Swartz a separate ticket for the stop sign offense does not impact this basis for probable cause to stop Swartz. The video of this offense and Sergeant Barry's testimony were clearly sufficient to allow the fact finder to find grounds for the stop.

Accordingly, as Swartz's stop was independently justified by Sergeant Berry's observation of his failure to fully stop at a stop sign, it is unnecessary to consider whether Swartz's stop was also justified for the additional reason of his failure to drive on the right half of the roadway.

Point Two is denied.

### Point Three

In Point Three on appeal, Swartz argues that the trial court erred in allowing the blood test results into evidence because the State did not lay the necessary foundation for the admission of the blood test results because evidence was presented that the chain of custody of the evidence was broken when there was a two-day period in which the blood was removed from evidence and the State could not account for its whereabouts.

Rule 29.11(d) [7] requires that Swartz's claim of error regarding the improper admission of evidence be included in his motion for a new trial in order to preserve the claim for appellate review. Having failed to so include this claim of error in his motion for a new trial, this Court is limited to review solely for plain error. *See State v. Leonard*, 490 S.W.3d 730, 742 (Mo. App. W.D. 2016).

Rule 30.20 authorizes this Court, in its discretion, to review "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted

therefrom." Our Supreme Court has established a threshold review to determine if a court should exercise its discretion to entertain a Rule 30.20 review of a claimed plain error. First, we determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]'" *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995) (quoting Rule 30.20). If not, we should not exercise our discretion to conduct plain error review. If, however, we conclude that we have passed this threshold, we may proceed to review the claim under a two-step process pursuant to Rule 30.20. In the first step, we decide whether plain error has, in fact, occurred. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). "All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious and clear." *Id.* (citation and internal quotation marks omitted). In the absence of evident, obvious, and clear error, we should not proceed further with our plain error review. If, however, we find plain error, we must continue to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Id.* at 607–08.

*State v. Williams*, 465 S.W.3d 516, 519 (Mo. App. W.D. 2015).

"In order to admit exhibits and testimony regarding tests performed on those exhibits, the trial court must be satisfied as to the identity of the exhibits and that the exhibits were in the same condition when tested as when the exhibits were originally obtained." *State v. Pennington*, 493 S.W.3d 926, 931 (Mo. App. W.D. 2016) (quoting *State v. Link*, 25 S.W.3d 136, 146

---

7. All rule references are to Missouri Supreme Court Rules (2016).

(Mo. banc 2000)). "This may be proven by evidence establishing a chain of custody, but proof of a chain of custody does not require proof of hand-to-hand custody of the evidence, nor proof that eliminates all possibility that the evidence has been disturbed." *Id.* at 931–32. "The trial court may assume, absent a showing of bad faith, ill will or proof, that officials having custody of exhibits properly discharged their duties and that no tampering occurred." *Id.* at 932.

The evidence at trial was that on the evening of the arrest Sergeant Berry took Swartz's blood samples and placed them in an evidence box, sealed the box, and then placed it into his patrol car. On March 24 at 9:41 a.m., Sergeant Berry deposited the evidence box into a locked evidence refrigerator at troop headquarters and approximately one hour later the box was signed for by an evidence officer, Sergeant Riley.[8] The next entry in the chain of custody log indicates that box was received by the testing laboratory on March 26. Sergeant Berry testified that from March 24 to March 26, Sergeant Riley had the blood samples in his custody. Swartz claims that the two days that Sergeant Riley had the evidence box are unaccounted for and constitute a gap in the chain of custody.

Swartz's claim has no merit. The evidence at trial was that the evidence officer, Sergeant Riley, had the samples in his custody from March 24 to March 26. Sergeant Riley, as evidence officer, signed for the samples, indicating they were under his charge, and we may infer that, consistent with his duties, he ensured that the samples proceeded to the laboratory for testing. Criminologist Craig Bishop who tested the blood samples testified that he received the sealed evidence box with two gray-topped test tubes located inside that were marked with Swartz's name and case number. Swartz has made no showing of bad faith, ill will or provided any evidence that Sergeant Riley did not properly discharge his duties.

■ Further, even if we assumed that Swartz is correct and this two-day period constitutes a gap in the chain of custody, absent a showing that the evidence was not in the same condition as when it was obtained, "such a gap goes only to the weight of the evidence offered, not its admissibility." *Pennington,* 493 S.W.3d at 932 (citing *State v. Reed,* 811 S.W.2d 50, 55 (Mo. App. S.D. 1991)). We conclude that Swartz has failed to meet his threshold showing that there are substantial grounds for believing that a manifest injustice or a miscarriage of justice has resulted from his alleged error. We, therefore, decline plain error review.

Point Three is denied.

## Point Four

■ In Point Four on appeal, Swartz argues the trial court erred in allowing the special prosecutor appointed to his case to issue charges against him and try the case because she lacked prosecutorial powers pursuant to sections 56.090, 56.240, 56.750, and 56.770 in that she was never sworn in by oath or affirmation and she did not have any statutory authority to prosecute a citizen of this state.

Swartz failed to raise his objection to his prosecution by the appointed special pros-

---

**8.** Swartz makes no argument on appeal that the storage of the blood samples in Sergeant Berry's patrol car for the two days before the samples were placed in the refrigerator at troop headquarters would have, due to environmental or other factors, resulted in the blood samples not being "in the same condition when tested as when the exhibits were originally obtained." *Pennington,* 493 S.W.3d at 931. Therefore we do not reach this issue.

ecutor until after trial.[9] Accordingly, this Court is limited to review for plain error. *See State v. Celis-Garcia*, 344 S.W.3d 150, 154 (Mo. banc 2011) ("An unpreserved claim of error can be reviewed only for plain error, which requires a finding of manifest injustice or a miscarriage of justice resulting from the trial court's error"). The standard of review for plain error has been set forth under Point Three and will not be repeated here.

Swartz claims that pursuant to section 56.240, the special prosecutor appointed to his case was required to "take and subscribe to the oath or affirmation of office required of prosecuting attorneys [ . . . . ]" Section 56.240 applies, however, only to the appointment of "assistant prosecuting attorneys" by the "prosecuting attorney" in third class counties. The prosecutor who tried Swartz's case was not an assistant prosecuting attorney but a special prosecutor appointed by the trial court pursuant to the trial court's inherent authority and statutory authority, under section 56.110, to do the same.

▰▰ Section 56.110 provides, in relevant part, that the trial court may appoint a special prosecutor if

> the prosecuting attorney and assistant prosecuting attorney be interested or shall have been employed as counsel in any case where such employment is inconsistent with the duties of his office, or shall be related to the defendant in any criminal prosecution, either by blood or by marriage [ . . . . ]

9. Swartz argues that he was unaware that the special prosecutor had failed to be given the oath of office until after the trial was over. Because we find that there was no error plain or otherwise as we find no oath was required of the special prosecutor as is discussed below, our standard of review would be immaterial to the outcome of this point.

"However, the power to appoint a special prosecutor is not limited by the statutory grounds specified in Section 56.110; rather, it is a power inherent in the court, to be exercised in the court's sound discretion, when for any reason, the regular prosecutor is disqualified." *State v. Eckelkamp*, 133 S.W.3d 72, 74 (Mo. App. E.D. 2004) (citing *State ex inf. Fuchs v. Foote*, 903 S.W.2d 535, 537 (Mo. banc 1995) (abrogated on other grounds by *State v. Olvera*, 969 S.W.2d 715, 716 n.1 (Mo. banc 1998)). Section 56.110 does not provide any explicit requirement that a special prosecutor is required to take an oath or affirmation, and Swartz has failed to identify any other authority that would so require.

Swartz also claims that sections 56.770 and 56.750, which detail and limit the authority of the Missouri Office of Prosecution Services ("MOPS"), preclude the prosecutor here from serving as a prosecutor by virtue of being a member of MOPS. These statutes are not relevant as the special prosecutor here did not act as prosecutor by virtue of any association with MOPS but rather was appointed by the trial court and exercised her authority to prosecute under section 56.110.

We find no error, plain or otherwise.

Point Four is denied.

### Point Five

In Point Five on appeal, Swartz argues that the trial court erred in denying his motion to suppress evidence because Sergeant Berry did not have probable cause to support Swartz's arrest for driving while intoxicated.[10]

10. Swartz's point on appeal reads as follows: "The trial court erred in overruling Appellant's Motion to Suppress Evidence because there was no reasonable suspicion to believe that appellant was driving a motor vehicle while under the influence of alcohol, and the arrest and subsequent evidence obtained as a result of the arrest constitutes an unreason-

 The filing of a motion to suppress does not preserve a claim for appellate review as the ruling on such a motion is interlocutory. *See State v. O'Neal*, 392 S.W.3d 556, 561–62 (Mo. App. W.D. 2013). Rule 29.11(d) requires most claims in jury tried cases, including objections to the admission of evidence, to be included in a motion for a new trial in order to be preserved for appellate review. Swartz failed to include this claim in his motion for a new trial. Accordingly, this Court is limited to review for plain error. *See Leonard*, 490 S.W.3d at 742. The standard of review for plain error has been set forth under Point Three and will not be repeated here.

 A warrantless arrest is valid so long as it is supported by probable cause. *State v. Pate*, 469 S.W.3d 904, 910 (Mo. App. E.D. 2015) (citing *State v. Garrett*, 627 S.W.2d 635, 641 (Mo. banc 1982)) (noting "[t]his proposition is so well recognized that it needs no authority").

The level of proof required to show probable cause is much less than that required to establish guilt beyond a reasonable doubt. [*Velluto v. Dir. of Revenue*, 383 S.W.3d 14, 18 (Mo. App. E.D. 2012).] There is no precise test for determining whether probable cause exists. *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 621 (Mo. banc 2002). Instead, "[p]robable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed

able search and seizure [ ... ] in that the officer's observations, namely: the odor of alcohol, watery and bloodshot eyes, and mumbled speech are insufficient factors to justify probable cause to believe Appellant was driving while intoxicated." In this Point, Swartz is challenging whether Sergeant Berry had *probable cause to arrest* Swartz for driving while intoxicated and is not again chal-

an offense." *Id.* Whether the arresting officer had probable cause to arrest [Swartz] for driving while intoxicated is therefore "determined by examining the circumstances surrounding the arrest as they appeared to a prudent, cautious, and trained police officer." [*Gannon v. Dir. of Revenue*, 411 S.W.3d 394, 397 (Mo. App. E.D. 2013)] (citing *Coyle v. Dir. of Revenue*, 88 S.W.3d 887, 893 (Mo. App. W.D. 2002)).

*Lord v. Dir. of Revenue*, 427 S.W.3d 253, 257 (Mo. App. E.D. 2014).

 "A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition." Section 577.010.1.[11] A person is intoxicated when "he is under the influence of alcohol, a controlled substance, or drug, or any combination thereof." Section 577.001.3. "A person is under the influence of alcohol when 'his use of alcohol impairs his ability to operate an automobile.'" *State v. Pickering*, 473 S.W.3d 698, 704 (Mo. App. W.D. 2015); *see also State v. Schroeder*, 330 S.W.3d 468, 475 (Mo. banc 2011).

The HGN, walk-and-turn, and one-leg stand tests, as well as the PBT, are all field sobriety tests available to officers in determining whether probable cause exists. An officer may, however, "develop probable cause to arrest an individual for driving while intoxicated absent any field sobriety tests at all." *Gannon*, 411 S.W.3d at 398. Thus, field sobriety tests are not a requirement for an officer to

lenging whether Sergeant Berry had reasonable suspicion to stop Swartz's vehicle in the first instance, as argued in Point Two.

11. Section 577.010 and accompanying provisions have been amended effective January 1, 2017. References to section 577 will be to the provisions in effect at the time of the offense in 2014.

develop probable cause that an individual is driving while intoxicated. *Velluto*, 383 S.W.3d at 18. Instead, "[t]he tests merely supplement the officer's other observations in determining whether probable cause exists." *Gannon*, 411 S.W.3d at 398.

*Lord*, 427 S.W.3d at 257. In the absence of any field sobriety test,[12] "other observations" can be sufficient to support probable cause to arrest for driving under the influence. *Id.* at 257–58. These other observations may include: erratic driving; the strong odor of intoxicating beverage; bloodshot, glassy, watery eyes; slurred speech; swaying balance or gait. *Gannon*, 411 S.W.3d at 398; *see also Brown v. Dir. of Revenue*, 85 S.W.3d 1, 4 (Mo. banc 2002) (probable cause to arrest a driver for alcohol-related violation exists when police officer observes illegal operation of motor vehicle, and other indicia of intoxication upon coming into contact with driver); *Routt v. Dir. of Revenue*, 180 S.W.3d 521, 523–24 (Mo. App. E.D. 2006) (strong odor of alcoholic beverage, watery, bloodshot, glassy eyes, slurred speech, and swaying provided officer with reasonable grounds to be-

lieve individual was driving while intoxicated); *Rain v. Dir. of Revenue*, 46 S.W.3d 584, 588 (Mo. App. E.D. 2001) (erratic and illegal driving, glassy, bloodshot eyes, slurred speech, unsteadiness on feet, difficulty concentrating sufficient to provide officer with probable cause to arrest).

■ Sergeant Berry, a trained law enforcement officer, testified regarding his observations that led to Swartz's arrest[13] and the following evidence was admitted at trial: (1) Sergeant Berry watched as Swartz drove down the middle of a two-way road, failed to stop at a stop sign, and again proceeded to drive down the middle of another two-way road after making a turn; (2) Sergeant Berry, after stopping Swartz's vehicle, noticed the odor of alcohol on Swartz's breath, and Swartz denied having consumed any alcohol; (3) Sergeant Berry observed that Swartz's eyes were glassy and blood shot and his speech was mumbled; (4) Sergeant Berry observed that Swartz had a difficult time handling the documents when he was searching through his papers for proof of insurance, which suggested to Sergeant Berry that Swartz lacked dexterity and coordination;

12. Sergeant Berry did not have Swartz perform the walk-and-turn or one-leg stand tests because Swartz informed him that he had a torn Achilles tendon. Sergeant Berry testified that the only field sobriety test he performed was the Horizontal Gaze Nystagmus Test ("HGN") but he admitted at trial that he performed the test incorrectly. Swartz does not challenge the admissibility of the HGN test due to the improper administration of the test as it was conceded at trial the test was performed incorrectly. A full discussion of the proper administration of the HGN test can be found in the concurring opinion in *State v. Browning*, 458 S.W.3d 418, 422 n.3 (Mo. App. W.D. 2015).

13. In briefing, it appears that Swartz agrees that he was not under arrest until after his conversation with Sergeant Berry in Sergeant Berry's patrol car and his statement to Sergeant Berry to "just take me in" for a breath

test on the "real machine" rather than submit to a preliminary breath test. Swartz mentions in briefing that Sergeant Berry flashed a signal to his patrol car camera prior to having Swartz exit his vehicle, but he does not explicitly argue that a decision to arrest was made at that time. Sergeant Berry testified that he usually indicates to the camera when he has a suspicion the driver is intoxicated but that he subsequently investigates to determine whether or not that is the case. As neither party explicitly addresses the issue of the exact time of arrest and it appears to the Court that the events prior to Swartz's refusal to take a preliminary breath test were part of an investigative detention, we will assume that everything that occurred prior to Swartz's statement to Sergeant Berry to take him in to test on a "real machine" was considered by Sergeant Berry in his determination of probable cause to arrest.

and (5) while he was in Sergeant Berry's patrol car, the odor of alcohol continued emanating from Swartz.

Based on all of these observations made by Sergeant Berry, which we accept as true under our standard of review, we find there was sufficient evidence to support a finding of probable cause to arrest Swartz for driving under the influence. Accordingly, Swartz has failed to meet his threshold showing that there are substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted from his alleged error. We decline plain error review.

Point Five is denied.

## Point Six

In Point Six on appeal, Swartz argues that the trial court erred "in failing to allow counsel for [Swartz] to adduce evidence that the roadway was not of sufficient width as to Count II and in allowing the State to submit its jury instruction related to that count, because such evidence was relevant, in that it negated an element of the State's charge under section 304.015.2 of the misdemeanor information, and by not allowing the evidence and submitting the instruction to the jury the trial court relieved the State of its burden of proof as to Count II."

 Although inartfully worded, Swartz's argument under Point Six in his brief is that his actual claim is one of instructional error as he argues that the instruction submitted to the jury on Count II did not require the jury to find that the roadway, on which Swartz was alleged to have failed to drive on the right side, was of "sufficient width".[14]

 Swartz was convicted of a violation of Section 304.015.2, which provides, in relevant part:

2. Upon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

(1) When overtaking and passing another vehicle proceeding in the same direction pursuant to the rules governing such movement;

(2) When placing a vehicle in position for and when such vehicle is lawfully making a left turn in compliance with the provisions of sections 304.014 to 304.025 or traffic regulations thereunder or of municipalities;

(3) When the right half of a roadway is closed to traffic while under construction or repair;

(4) Upon a roadway designated by local ordinance as a one-way street and marked or signed for one-way traffic.

14. Swartz's Point Six on appeal contains arguably three separate claims of error: (1) error in failing to include in the jury instruction a finding that the road was of "sufficient width"; (2) error in not allowing Swartz to present evidence to the jury regarding the road's width; and (3) error in rejecting Swartz's proffered jury instruction. Claims of error (1) and (2) above are arguably included in his point relied on. However, each point relied on may only contain one claim of error and multifarious points on appeal leave nothing for appellate review. *See Wolf v. Midwest Nephrology Consultants, PC.,* 487 S.W.3d 78, 84 (Mo. App. W.D. 2016). As explained in the body of the opinion, Swartz's argument suggests that his claim of error is instructional error as that is the standard of review he identifies in the point. As we prefer to decide cases on the merits, we will treat the point as addressing claim (1) above. Claim (3) regarding the alleged error of the trial court in rejecting his proffered instruction is not contained in the point relied on but only in a footnote in the body of the argument. Swartz may only argue claims of error identified in his point relied on. *See* Rule 84.04(e). As such claim (3) will not be considered by this court under this Point Relied On.

This offense requires proof of three elements: (1) that Swartz was driving a vehicle on "a public road or highway of sufficient width"; (2) that he failed to drive on the right half of the road; and (3) that none of the four listed exceptions apply. *See State v. Reando*, 313 S.W.3d 734, 739 (Mo. App. W.D. 2010).

 There is no Missouri Approve Instruction ("MAI") for a violation of section 304.015.

> Rule 70.02 governs the provision of instructions to juries. *McBryde v. Ritenour Sch. Dist.*, 207 S.W.3d 162, 168 (Mo. App. E.D. 2006). "When there is no applicable MAI instruction, a non-MAI instruction may be given if it conforms to the requirements of Rule 70.02 in that it is simple, brief, impartial and free from argument." *City of Kansas City v. Habelitz*, 857 S.W.2d 299, 303 (Mo. App. W.D. 1993). "And in giving such a non-MAI instruction, 'the court must adopt an instruction that follows the substantive law and can be readily understood by the jury.'" [*Morgan v. State*, 272 S.W.3d 909, 911 (Mo. App. W.D. 2009)] (quoting *Lewis v. State*, 152 S.W.3d 325, 329 (Mo. App. W.D. 2004)); Rule 70.02(b). "The instructions together must require a finding of all the ultimate facts necessary to sustain a verdict." *Durley v. Board of Police Comm'rs*, 238 S.W.3d 685, 687 (Mo. App. E.D. 2007). "In order for us to reverse on instructional error, we must find that the instruction at issue misdirected, misled, or confused the jury, and prejudice resulted." *Id.* "As a general proposition it is error to remove an essential element of a case from the jury's consideration." *Huff v. Union Elec. Co.*, 598 S.W.2d 503, 515 (Mo. App. E.D. 1980). "However, a jury should not be required to find an element or fact not actually contested or in issue." *Id.*

*Pool v. Farm Bureau Town & Country Ins. Co. of Mo.*, 311 S.W.3d 895, 903–04 (Mo. App. S.D. 2010).

 The parties contest whether this issue has been preserved on appeal. The State argues that Swartz failed to object to its proposed jury instruction and, therefore, the claim can only be reviewed for plain error. We disagree. Swartz submitted his own proposed jury instruction to the court that would have required the jury to find the roadway was of "sufficient width," as interpreted by Swartz as meaning at least thirty feet in width. This instruction was denied by the court, and the court accepted the State's instruction that omitted this element altogether. Swartz also raised this issue in his motion for a new trial. There is no question that the issue of whether or not the jury instruction submitted to the jury failed to require a jury finding on the essential element of whether the roadway was of sufficient width was raised and argued before the trial court. We find that this is sufficient to preserve Swartz's claim on appeal. The court was on notice as to this contested issue and, where there is no MAI instruction, the court is required to properly instruct the jury in accordance with the substantive law. *See id.* at 73. ("in giving such a non-MAI instruction, the court must adopt an instruction that follows the substantive law and can be readily understood by the jury"). The claim of error has been preserved.

 The instruction submitted to the jury on this count provided the following, in full:

> As to Count II, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about March 21, 2014, on Williams Street in the County of Randolph, State of Missouri, the defendant operated a motor vehicle, and

Second, that he failed to drive on the right half of the roadway,

then you will find the defendant guilty under Count II of failing to drive on the right half of the roadway.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Swartz attempted to argue at trial that the roadway on which he was driving was not of sufficient width and sought to rely on section 229.010 to support his argument. As is apparent above, the submitted instruction did not require that the jury make any finding regarding whether the roadway upon which Swartz was driving was of "sufficient width." On the face of it, the instruction failed to follow the substantive law with regard to this essential element.

Regarding prejudice, Swartz attempted to introduce evidence at trial that Williams Street is less than 30 feet in width. Swartz believes this was relevant because section 229.010 provides that after its enactment in 1939 that all public roads "shall not be less than thirty feet in width." The trial court did not allow the introduction of this evidence at trial but allowed Swartz to submit an offer of proof to this effect. While Swartz was precluded from present-ing evidence regarding the width of the road on which he was driving, the State was allowed to present evidence from Sergeant Berry that in his opinion the road was wide enough that two cars could safely pass each other going in opposite directions. Nevertheless, the jury was not required to make any finding as to whether the road was of sufficient width as is required by the statute. The jury instruction assumed an essential element of the offense that was factually disputed at trial. We find that prejudice resulted as a result of the omission.

Point Six is granted.

## Conclusion

Swartz's conviction and sentence for Failure to Drive on the Right Half of the Roadway of Sufficient Width is reversed and remanded to the trial court. The remainder of the circuit court's judgment and sentence is affirmed.

All concur